**Michael Ray OWENS, Petitioner– Respondent,**

v.

**Linda Kay OWENS, Respondent– Appellant.**

**No. 27618.**

Missouri Court of Appeals, Southern District, Division Two.

April 30, 2007.

---

Richard L. Schnake, Neale & Newman, L.L.P., Springfield, for appellant.

John R. Lightner, Mark J. Millsap, J. Matthew Miller, Baird, Lightner, Millsap & Harpool, P.C., Springfield, for respondent.

PHILLIP R. GARRISON, Judge.

Linda Kay Owens ("Wife") appeals from the judgment entered in the dissolution of her marriage to Michael Ray Owens ("Husband"). Wife alleges the trial court erred in denying her maintenance and in awarding Husband a money judgment against her. We affirm in part and remand in part with directions.

The parties were married on March 6, 1982, and separated on or about December 7, 2004. No children were born of the marriage. On December 17, 2004, Husband filed a petition for dissolution of marriage, and on January 25, 2005, Wife filed an answer and counter-petition for dissolution of marriage, requesting an award of spousal maintenance. Viewed in the light most favorable to the trial court's judgment, the following evidence was adduced at trial.

Husband was fifty years old at the time of dissolution, and had been working for LaFollette Excavating for nine months, running heavy equipment. Husband's gross monthly income was $3,245.83. Before working at his present employment, Husband worked as a full-time horse trainer for six years, which consisted of breaking, training, showing, buying, selling, and trading horses. Husband had previously worked twenty-one years for the railroad in Springfield, Missouri, which he left voluntarily to work as a horse trainer. Upon his retirement at age sixty-six, Husband would be entitled to railroad retirement benefits. It was his understanding that there were two levels of retirement benefits, one being Tier One, which was likened to social security and would be automatically divided between he and Wife. The other one was Tier Two, which Husband was willing to divide "50/50" with Wife.

Wife, who had been employed throughout the marriage, had also worked for the railroad at one time, but lost her job through a merger. At the time of the dissolution hearing, Wife was employed part-time as a court clerk for the Webster County Circuit Court, earning $1,437.60 per month, but she was looking for a full-time job.

Husband and Wife owned a farm, consisting of a house, and various outbuildings on twenty acres of land, including a horse barn. The horse barn was a 117′ × 150′ riding facility with sixteen stalls, a lounge,

and an apartment. Husband had rented the stalls out in the past and had received approximately $200 to $250 a month per stall. This stall rental included feeding, cleaning, and training the horses. He said that he still had the capability to rent the stalls out now. There was testimony that the fair market value of the farm was $295,000.

At the time of the separation the parties owned thirteen horses, and one-half interest in three other horses. The parties also owned commercial property consisting of a one-acre tract of land located in Ozark, Missouri. On that property was a building, known as the Branson Welcome Center, which was a ticket outlet for shows and attractions in the Branson, Missouri, area, and a billboard. This property produced income of $3,500 per month, which consisted of the front side of the billboard that rented for $1,000 per month, and the building rental of $2,500 per month. The back side of the billboard had poor visibility from the highway and had never been rented out. The commercial property was valued at $390,000, and carried an unpaid mortgage with a balance of $4,382.61.

On July 19, 2005, the trial court heard evidence, and on December 7, 2005, it entered its "Findings and Recommendations for Judgment of Dissolution of Marriage." In its findings, the court dissolved the parties' marriage. The court awarded the commercial property and billboard, which it valued at $390,000, to Wife. The court denied Wife's request for maintenance, finding that she could meet her reasonable needs from the $3,500 per month in income from the commercial property and her $1,438 per month in gross salary.

The court awarded to Husband the farm, which it valued at $295,000, and ordered him to pay the debt of $76,735.88

against it. The court also awarded to Husband the sixteen horses.

The court found that in order to achieve an equitable distribution of all marital assets and debts, Wife should pay Husband the amount of $73,266, and the court also ordered that the railroad retirement, Tier Two, be divided one-half to each party. Wife filed a motion for rehearing, which was overruled. This appeal followed.

## OPINION

■ In Wife's first point on appeal, she argues that the trial court erred in denying her maintenance, because its ruling is unsupported by the evidence and is against the weight of the evidence. We disagree.

■ In a dissolution proceeding, we will affirm the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence or erroneously declares or applies the law. *Youngberg v. Youngberg*, 194 S.W.3d 886, 893 (Mo.App. S.D.2006). We view the evidence in the light most favorable to the trial court's ruling, disregarding evidence to the contrary. *Id.* "[T]he trial court has broad discretion in determining whether or not to award maintenance." *Id.*

The determination of whether to award maintenance under [S]ection 452.335 [1] is a two-step procedure. In the first step, [S]ection 452.335.1 requires the trial court to find that: (1) the party seeking maintenance lacks sufficient property, including marital property apportioned to that spouse, to provide for his or her reasonable needs; and (2) the party seeking maintenance is unable to support herself through appropriate employment. Once these findings are

---

1. All statutory references are to RSMo (2000) and all references to rules are to Missouri Rules of Civil Procedure (2005), unless otherwise indicated.

made, [S]ection 452.335.2 requires that the trial court, in determining the amount and duration of its maintenance award, consider the ten factors enumerated in the statute and balance the reasonable needs of the spouse seeking maintenance with the other spouse's ability to pay. When both steps have been satisfied, the statute provides that maintenance should be awarded in such amounts and for such periods of time as the court deems just.

*Tarneja v. Tarneja,* 164 S.W.3d 555, 564–65 (Mo.App. S.D.2005)(internal citations and quotations omitted).

Here, the trial court found that "each party is capable of being self-supporting and neither is entitled to maintenance." The trial court further found that "[Wife] is able to meet her reasonable needs awarding the real estate property along with the wages and salary that she earns." Regarding Wife's income, the trial court found credible evidence indicating that the commercial property awarded to Wife generated $3,500 per month, and that Wife's salary was $1,438 per month. The trial court found that Wife's net income after taxes totaled $3,975 per month. While the trial court made no specific findings regarding Wife's reasonable needs, it did relate that, "utiliz[ing] [Wife's] exhibit '4' of her total average monthly expenses of being $3,720[,] . . . the Court finds that she is able to meet her reasonable needs[.]"

Wife argues that the trial court's finding that she is able to meet her reasonable needs is erroneous. Specifically, Wife maintains that, "[a]lthough the court gave [Husband] a $73,266 judgment against [Wife], it based its finding of the amount of [Wife's] expenses on her expense statement and did not recognize that her expenses must increase if she must borrow the money to pay the judgment." Wife maintains that, "[a]t interest of 6%, . . . a loan for $73,266 would require monthly payments of $813.40 for [ten] years." Wife also argues that the trial court erred in calculating her net income after taxes in that it did not take into account her Missouri income tax liability, which would reduce her net income to $44,443.68 or $3,703.64 per month.

■ We agree that a proper assessment of her reasonable needs must take into consideration the cost of paying the money judgment against her. Section 452.335.1(1) requires that the trial court consider the "marital property apportioned" to the spouse in determining whether a spouse is able to provide for his or her reasonable needs. This requirement "reflects the general principle that investment income must be considered, so that maintenance is not awarded for the purposes of building an estate or accumulation of capital, but for the recognized purpose of assisting a spouse who is unable to be self-supporting." *Cohen v. Cohen,* 73 S.W.3d 39, 47 (Mo.App. W.D.2002)(internal citations and quotations omitted). It necessarily follows that the expense of paying any debt associated with the "marital property apportioned" must also be considered in determining whether a spouse is able to provide for his or her reasonable needs.

■ Nevertheless, even after utilizing Wife's calculation of her net monthly income of $3,703.64, and considering the effect the payment of the money judgment would have on her ability to meet her reasonable needs, we do not find that the trial court erred in denying her maintenance. We note that the trial court's denial of maintenance is proper on the basis that Husband is without ability to pay a maintenance award. "In a dissolution of marriage case, we affirm a trial court's judgment if the result was correct on any tenable basis." *In re Marriage of Thom-*

*as,* 21 S.W.3d 168, 175 (Mo.App. S.D.2000). Viewing the evidence in the light most favorable to the trial court's judgment, Husband's net income is $2,364.23 per month,[2] while his monthly expenses totaled $5,400 per month, constituting a shortfall of $3,035.77 per month. While both spouses have a shortfall, Wife is in a better financial position in that she has greater monthly income and less monthly expenses than Husband. "An award of maintenance should not exceed the paying spouse's capacity to provide." *Griffin v. Griffin,* 986 S.W.2d 534, 538 (Mo.App. W.D.1999). In this case, Husband does not have the capacity to provide any amount of maintenance to Wife. The trial court did not err in denying maintenance, because even if Wife were unable to meet her reasonable needs, Husband would not have the resources to pay a maintenance award. *See Stelling v. Stelling,* 769 S.W.2d 450, 453 (Mo.App. W.D.1989)(denial of maintenance affirmed where trial court's disposition left both parties with an inability to provide for their needs). This point is denied.

■ In her second point, Wife maintains that the trial court erred in entering judgment against her for $73,266 as part of its division of the marital property, because she cannot afford to pay the judgment. We disagree.

■ Our review of the trial court's division of marital property is a two-step process. "[W]e review first to determine whether the trial court's division of marital property is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." *Nelson v. Nelson,* 195 S.W.3d 502, 506 (Mo.App. W.D.2006). We then determine whether the trial court's division is an abuse of discretion. *Id.* The appellant has the burden of overcoming the presumption that the trial court's division of property was correctly decided. *Id.* As with our review of the trial court's denial of maintenance, we view the evidence in the light most favorable to the trial court's decree and disregard any evidence to the contrary. *Id.*

■ A trial court must follow a two-step procedure when dividing property in a dissolution proceeding: (1) the court must set apart to each spouse their non-marital property, and (2) the court must divide the marital property and debts in such proportions as the court deems just after considering all relevant factors. *Id.* at 506–07. "The division of marital property need not be equal, but must be fair and equitable given the circumstances of the case." *Id.* at 507.

Section 452.330.1 provides, in relevant part, that the court divide the marital property and marital debts as it deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the non[-]marital property set apart to each spouse;

**2.** Wife argues that in addition to his income from his employment, Husband has additional sources of income. However, because Wife did not request findings regarding Husband's income, "we must consider all factual issues as having been resolved in accordance with the results reached." *Hammer v. Hammer,* 139 S.W.3d 239, 241 (Mo.App. W.D.2004)(citing Rule 73.01(c)).

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

Wife contends that the trial court did not properly consider her economic circumstances, because she cannot afford to pay the judgment of $73,266. However, the trial court related in its judgment that "[it] has taken all relevant factors into consideration including those set out in Section 452.335[ ], in its recommended division of property and debt."

The trial court's statement that it considered all relevant factors is supported by the fact that the division of the marital property was clearly equitable. The trial court awarded to Wife property totaling $413,526, and debts totaling $77,638.61,[3] for a net award of $335,887.39. The trial court awarded Husband property totaling $421,196.15,[4] and debts totaling $89,409.88, for a net award of $331,786.27. As we related in our discussion of Wife's first point, Husband has a greater monthly deficit than Wife, and yet the division of marital property was nearly even. Under such circumstances, we do not find that the trial court erred in granting a judgment of $73,266 against Wife. This point is denied.

 In Wife's third point, she points out that in Exhibit D, which is incorporated into the trial court's judgment, the trial court mistakenly labels her interest in Husband's retirement as "1/3 Railroad Retirement Tier 2." Earlier in its judgment the trial court related that "Tier Two is divisible by the Court and the Court finds that it is appropriate that Tier Two be divided one-half to each party." Wife asks that this Court "order that the distribution of benefits to [Wife] be corrected to read '1/2 Railroad Retirement Tier 2.'" In his brief, Husband concedes that the trial court made a typographical error in the judgment, and "therefore stipulates to the amendment of Exhibit 'D' of the Judgment[.]"

The trial court's reference to "1/3 Railroad Retirement Tier 2" is clearly a typographical error. Therefore, we remand to the trial court with direction to enter an amended judgment awarding Wife "1/2 Railroad Retirement Tier 2." In all other respects the judgment is affirmed.

BATES, C.J., and LYNCH, J., concur.

---

3. This figure takes into account the judgment of $73,266 granted in favor of Husband.

4. This figure also takes into account the money judgment granted in favor of Husband.