In re: The MARRIAGE OF Carol Leigh HOUSE and Larry Joe House.

Carol Leigh House, Petitioner–Respondent,

v.

Larry Joe House, Respondent–Appellant.

No. SD 29295.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 14, 2009.

---

Joanne M. McCracken, of Garfield, AR, for Appellant.

W. Henry Johnson, of Neosho, MO, for Respondent.

DON BURRELL, Presiding Judge.

Larry Joe House ("Husband") appeals the judgment dissolving his marriage to Carol Leigh House ("Wife"). Husband claims the trial court erred in: 1) denying his request to continue the trial setting; 2) overvaluing a particular piece of marital property; 3) awarding Wife maintenance; and 4) depriving him of continuing and meaningful contact with his children. Wife filed a motion to dismiss the appeal, alleging all of Husband's points relied on failed to follow the requirements of Rule 84.04(d).[1] Finding all of Husband's points on appeal deficient in some respect, and no trial court error in those that are capable of being reviewed in spite of the rule violations, we affirm the judgment.

Viewed in the light most favorable to the judgment, *Ludwig v. Ludwig*, 126 S.W.3d 466, 474 (Mo.App. W.D.2004), the facts are as follows. The parties have six minor children who, at the time this action was commenced, ranged in age from four months to nine-and-a-half years old. About forty-five days after filing her petition for dissolution, Wife filed a motion requesting *pendente lite* relief. Two months later, the trial court issued a *pendente lite* order setting child support and a child contact schedule in accordance with the parties' stipulation. This order designated Wife as the residential custodian for mailing and education purposes and awarded Husband the same contact schedule (less a week during the summer that was added in the final judgment) that Husband now says constitutes an abuse of the trial court's discretion.

The trial court's final dissolution judgment awarded Wife and Husband "joint custody of the minor children." Wife was "designated as the residential custodian of the children for purposes of education and mailing," and Husband was awarded "specific visitation" as follows:

a. Once the children are three (3) years of age, alternating weekends from 6:00 p.m. Friday to 6:00 p.m. the following Sunday;

b. With regard to the children, under the age of three (3), [Husband] shall have visitation on alternating weekends from 9:00 a.m. Saturday until 6:00 p.m. Saturday and from 9:00 a.m. Sunday until 6:00 p.m. Sunday;

. . .

h. [Husband] shall be entitled to one (1) week of summer visitation each summer. Said visitation shall not include overnight for the children under three (3). [Husband] shall provide [Wife] with 30–day's [sic] prior written notice of his intention to exercise summer visitation;

i. [Husband] shall be the party responsible to pick up the children at the commencement of each visitation period and return the children at the termination of each visitation period.

Other facts relevant to the disposition of this appeal will be set forth in our discussion of the point to which they relate.

We will begin our analysis with a recitation of the rules that govern the drafting of an appellant's points relied on. From there, we will set forth each of Husband's points and determine whether they are in compliance with those rules. If a particular point is deficient, we will then determine whether the deficiency is so serious as to prevent review. If, in spite of the rule violation(s), we believe we are able to

---

1. Wife's motion to dismiss was taken with the case.

All rule references are to Missouri Court Rules (2009).

review the allegation of error on its merits, we will then do so.

*Rules Governing Points Relied On*

Rule 84.04(d)(1) provides that a point relied on in an appellant's brief shall "(A) identify the trial court ruling or action that the appellant challenges; (B) state concisely the legal reasons for the appellant's claim of reversible error; and (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Although its wording has changed, the purpose of the rule remains as described in *Thummel v. King*, 570 S.W.2d 679, 685 (Mo. banc 1978):

> [C]ompliance with these requirements is a matter of common sense if counsel bear in mind the informational purpose of the brief. After stating the ruling the trial court actually made, it stands to reason that the point should then specify Why the ruling was erroneous. This requirement essentially contemplates a statement which ordinarily will closely approximate what appellant believes should have been the trial court's conclusion of law on the point being addressed. After stating why the ruling was erroneous, the court then must be informed Wherein the testimony or evidence gives rise to the ruling for which appellant contends.

A point that claims error but then fails to allege why the ruling was erroneous or fails to refer to testimony or other evidence that supports the appellant's contention preserves nothing for appellate review and constitutes grounds for dismissing the appeal. *Midwest Arbitration & Mediation, Inc. v. Condry*, 17 S.W.3d 147, 148–49 (Mo.App. S.D.2000) (citing *Murphy v. Aetna Cas. & Sur. Co.*, 955 S.W.2d 949, 950 (Mo.App. S.D.1997) and *Skalecki v. Small*, 976 S.W.2d 566, 568 (Mo.App. S.D.1998)).

"Deficient points relied on force the appellate court to search the argument portion of the brief or record itself to determine an appellant's assertions, thereby wasting judicial resources, and, worse yet, creating the danger that the appellate court will interpret the appellant's contention differently than appellant intended or his opponent understood." *Condry*, 17 S.W.3d at 149. However, "[n]otwithstanding non-compliance with Rule 84.04, appellate courts may exercise discretion and attempt to resolve issues on their merits unless the defective point impedes disposition of the case on its merits." *Atkins v. McPhetridge*, 213 S.W.3d 116, 120 (Mo. App. S.D.2006).

*Point I: Motion for Continuance*

Husband's first point reads as follows:

> The Trial Court erred in denying the motion for a continuance by the attorney who agreed to represent [Husband] because said ruling was an abuse of discretion, and inconsistent with Mo. Court R. 65 in that the Trial Court allowed [Husband's] attorney to withdraw less than three weeks before trial, there had been no other continuances and no prejudice to the parties would have resulted because temporary orders were in place mandating payment of marital financial obligations, child support and regulating visitation.

While Husband's point fails to allege how the trial court's ruling was inconsistent with the requirements of Rule 65, the deficiency is not so serious as to impede our ability to review the merits (or lack thereof) of his claim of error.

Husband hired counsel after Wife filed her petition, and that attorney represented him throughout the preliminary stages of the case. On January 23, 2008, a pre-trial conference was held and a trial date of

May 23, 2008, was set. On April 24, 2008, Husband's attorney filed a motion to withdraw. The trial court allowed Husband's attorney to withdraw on May 5, 2008. Over two weeks later—a few days before trial was scheduled to begin—a local attorney appeared and said he would be willing to represent Husband if the court would reschedule the pending trial to a later date. The trial court refused to continue the trial setting, and Husband was not represented by counsel at trial.

■ The decision to grant or deny a continuance "is within the discretion of the trial court." *Bydalek v. Brines,* 29 S.W.3d 848, 855 (Mo.App. S.D.2000). In addition, we will find the trial court abused its discretion only if the record clearly shows that the movant was "free of any dereliction." *Chapman v. St. Louis County Bank,* 649 S.W.2d 920, 924 (Mo.App. E.D. 1983) (stating "[o]nly in extreme cases where it clearly appears that the moving party ... is free of any dereliction will this court disturb the trial court's decision").

The procedure for requesting a continuance is governed by Rule 65.03, which states:

An application for a continuance shall be made by a written motion accompanied by the affidavit of the applicant or some other credible person setting forth the facts upon which the application is based, unless the adverse party consents that the application for continuance may be made orally. In any application for continuance made within thirty days of the date the matter is scheduled to be heard, the lawyer shall certify that the party for whose benefit the motion is filed has been consulted, that the party is aware of the contents of the motion, and the party's position with respect to the motion.

■ Although Husband complains the trial court's denial of a continuance was inconsistent with the requirements of Rule 65, the record does not show that a written motion for continuance in compliance with that rule was ever filed or that Wife consented to an oral application. A statement by an attorney who does not represent either party to the effect that he will enter his appearance if a pending trial setting is continued does not remotely constitute a motion for continuance made pursuant to Rule 65.03. Though Husband points out that the trial court stated on the morning of trial that it did not continue the trial setting because Wife "did not consent to the continuance," no such explanation was necessary. "When a moving party ignores the affidavit or verification requirements of Rule 65.03, no abuse can result in denying the continuance." *Bydalek,* 29 S.W.3d at 856. Here, Husband followed *none* of the requirements of Rule 65.03, and the same result follows. Point I is denied.

## Point II: Marital Property Division

■ Husband's second point states:

The Trial Court erred in its division of marital property, because said ruling was against the weight of the evidence, an abuse of discretion, and inconsistent with Mo.Rev.Stat. [section] 452.330, in that the division of marital property was against the weight of the testimonial evidence; specifically a portion of the marital property was twice awarded to [Husband] resulting in an inequity that caused [Husband] financial hardship and impacted the ruling of the Trial Court in other financial decisions, including maintenance and an award of attorney's fees to [Wife].

Husband's second point on appeal is defective in that it: 1) fails to identify which item of property he alleges "was twice awarded to Husband"; and 2) how, in the context of this case, said error impacted

the other referenced portions of the judgment. Although the argument portion of Husband's brief never gets around to claiming how the overall division of property was negatively affected by this alleged error, it does eventually identify the item claimed to have been awarded twice, and we will address that particular portion of his claim.

We use a two-step process to review a trial court's division of marital property. *Owens v. Owens,* 219 S.W.3d 867, 872 (Mo.App. S.D.2007). First, we "determine whether the trial court's division of marital property is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." *Nelson v. Nelson,* 195 S.W.3d 502, 506 (Mo.App. W.D.2006). Second, we "determine whether the trial court's division is an abuse of discretion." *Owens,* 219 S.W.3d at 872. We presume "that the trial court's division of property was correctly decided"; therefore, Husband must overcome that presumption. *Id.* "[W]e view the evidence in the light most favorable to the trial court's decree and disregard any evidence to the contrary." *Id.*

From the argument section of Husband's brief, we discern that the trial court's award of the following property was relevant to his complaint:

A. 1996 Ford F150–$3,500;

1995 International log truck VIN# 2HSFBAER7SCO36952–$45,000;

1976 Ford 8000 log truck—$10,500;

. . .

E. Logging equipment: picker for logging truck—$30,000; 1978 Timber Jack log skidder—$10,000;

Husband's contention is that the International log truck and log picker were one unit that had a total value of $30,000 and the court's assigning a value of $45,000 to the International log truck and $30,000 to the log picker "twice awarded Father one marital asset."

On May 7, 2008, Wife filed with the court a "DR Form 1" ("Summary of Marital and Non–Marital Property and Liabilities"). At trial, the DR Form 1 prepared by Wife was marked as Exhibit 5 and received into evidence by the court without objection. Exhibit 5 listed two "log trucks" as marital property; a "1995 International log truck VIN# 2HSFBAER7SCO36952" and a "1976 Ford 8000 log truck." On Exhibit 5, Wife valued the International log truck at $45,000. Exhibit 5 stated Husband's valuation of the International log truck was $40,000. Exhibit 5 stated Wife's valuation of the 1976 Ford 8000 log truck was $10,500 and listed Husband's valuation at $3,000. Under a section entitled "Business interest," Exhibit 5 indicated that Wife valued a "Picker for logging truck" at $5,000.[2] The space for indicating Husband's valuation of the item was blank. This portion of Exhibit 5 also indicated that a "1978 Timber Jack log skidder 2250" was valued at $40,000 by both Wife and Husband.

When Wife was testifying about the valuation information contained in Exhibit 5, the following colloquy took place:

[Wife's attorney]: He has a '78 Timberjack log skidder. Both of you say it's worth 40,000.

[Husband]: Your Honor, that was a— amended version I was needing to talk over. That was a misprint on Ms. Rhoades'—

**2.** The record does not indicate whether this "picker for logging truck" was attached to one particular logging truck or could be attached to either one.

[The Court]: Okay. Well, you can bring that up.

[Husband]: Okay.

[The Court]: But right now, we're listening to her evidence; you'll be given an opportunity to take—give me your evidence in a little bit.

The trial court later directly questioned Husband about his valuation evidence as follows:

[The Court]: I just have one question. You were—You said there was some discrepancy on this 1978 Timberjack log splitter—log skidder?

[Husband]: Yes, sir.

[The Court]: You said it's listed 40,000; you said Christy Rhoades got something wrong. Is that—

[Husband]: Yeah. I've got the parts—

[The Court]: Just tell me what you think the value is.

[Husband]: The 40,000 was the—my picker truck and my skidder together. The picker truck is worth about 30, and the log skidder is worth about 10.

[The Court]: The picker for the logger truck is 30,000, you said?

[Husband]: It's worth about 30. Yes, sir.

[The Court]: And then the Timberjack log splitter—log skidder is 10,000.

[Husband]: Yes, sir. That's correct.

Husband alleges that his "uncontroverted testimony" was that the International log truck and the picker for the logger truck were together valued at $30,000 and "the log skidder had a value of $10,000.00." First, the trial court was free to disbelieve any or all of Husband's testimony, even if it had not been controverted by Wife's evidence. Second, the record reveals that neither party ever identifies which logging truck they are referring to in their trial testimony. Husband's testimony was inconsistent in that he first stated that the " 'picker truck' [was] worth about 30" (implying a joint valuation of both the truck at issue and its associated picker) and moments later indicating to the court that the "picker *for* the *logger truck*" was "worth about 30" (emphasis added).

Most importantly, when viewed in the light most favorable to the decree—as it must be—the last four lines of Husband's testimony above was sufficient to scuttle his claim of error. The trial court specifically asked Husband, "The picker for the logger truck is 30,000, you said?" Husband responded, "It's worth about 30. Yes, sir." The trial court then asked, "And then the Timberjack log splitter—log skidder is 10,000." Husband responded, "Yes, sir. That's correct." This portion of Husband's trial testimony supports the trial court's finding that the picker itself was worth $30,000 separate and apart from whichever logging truck it was associated with. The trial court was also free to believe, based on Wife's valuation in Exhibit 5, that the International logging truck was itself worth $45,000. Point II is denied.

*Point III: Maintenance*

■■■ Husband's third point alleges:

The Trial Court abused its discretion in granting [Wife] an award of maintenance because this award was against the weight of the evidence and was inconsistent with Mo.Rev.Stat. [section] 452.335 in that the Trial Court did not apply the factors set out in Mo.Rev.Stat. 452.335.1 and 452.335.2 in awarding maintenance; specifically the trial court's decision was against the weight of the evidence that [Wife] was capable of employment and evidence that [Husband] no longer had the ability to meet his own needs.

Husband's point is fatally defective in that it is completely abstract. It fails to identi-

fy what evidence Husband is referring to and how, in the context of this case, it supports his claim of error. Our review of the argument portion of Husband's brief on this point leaves us in no better position. The entirety of Husband's argument consists of a claim that: 1) the trial court should have believed Husband's testimony and given no credence to Wife's evidence; and 2) Husband was "great[ly] preju-dice[d]" by his "inability to effectively act as his own counsel." Moreover, Husband's brief concedes that Wife presented suffi-cient evidence to show a need for mainte-nance and points to no evidence that shows Husband was unable to meet his own needs.

The first portion of Husband's argument ignores our obligation to defer to the trial court's assessment of witness credibility. As to the second part, Husband claims some sort of excusable neglect, stating, "In the case at bar, [Husband] had evidence to show that his current financial situation would not allow him to meet his needs. Whether through inadvertence or mistake, [Husband] failed to enter these documents as exhibits during the trial and only his prior income was considered." He then argues that *In re Estate of Mapes*, 738 S.W.2d 853 (Mo. banc 1987), directs us to remand the case to the trial court so that evidence of Husband's current financial situation can be presented.

*In re Estate of Mapes* involved a claim that a decedent's attorney used fraud and undue influence to force a decedent to transfer property to his attorney. Defen-dants moved for a directed verdict at the close of plaintiffs' case. The plaintiffs then requested leave to reopen their case dur-ing their argument on the directed verdict motion. *Id.* at 854. The trial court denied plaintiffs' request for leave to reopen and entered a directed verdict in favor of de-fendants. *Id.* On those facts, *Mapes* then

held that " '[w]hen there is no inconven-ience to the [C]ourt or unfair advantage to one of the parties, there is an abuse of discretion and a new trial will be directed upon a refusal to reopen a case and permit the introduction of material evidence, that is evidence that would substantially affect the merits of the action and perhaps alter the [C]ourt's decision.' " *Id.* at 855 (quoting *Pride v. Lamberg*, 366 S.W.2d 441, 445 (Mo. banc 1963)). Husband made no such request in this case. Point III is denied.

*Point IV: Sufficiency of Child Contact Schedule*

Husband's fourth point on appeal reads as follows:

The Trial Court erred in restricting [Husband's] visitation to one week of summer visitation and to restricting visi-tation with the two youngest children to daytime hours only because this decision was not supported by the weight of the evidence and was inconsistent with Mo. Rev.Stat. [section] 452.400.1 (2008) and the public policy of the state of Missouri as set out in Mo.Rev.Stat. [section] 452.375.4in [sic] that the Trial Court failed to consider the factors of Mo.Rev. Stat. [section] 452.400.1 (2008) and Mis-souri public policy favoring frequent, continuing and meaningful contact of children with both parents in its deter-mination that [Husband's] visitation with the younger children would be scheduled differently than his visitation with the other children and in its restriction of [Husband's] summer visitation to only one week which resulted in a custodial arrangement that denied [Husband] con-tinuing and meaningful contact with his children.

Among other problems, Husband's fourth point is in violation of Rule 84.04 in that it improperly combines three separate claims of error into one single point relied on. *See In re Marriage of Fritz*, 243

S.W.3d 484, 486–87 (Mo.App. E.D.2007). However, because the alleged errors implicate the ability of the parties' minor children to maintain a relationship with both parents and we are able to discern the nature of Husband's complaints, we will address the gist of them and not deny the point on the grounds that it is multifarious.

"We will reverse the trial court only if we conclude that the judgment was against the weight of the evidence, was not supported by substantial evidence, or misstated or misapplied the law." *Ludwig*, 126 S.W.3d at 474. We review the evidence in the light most favorable to the judgment, disregard contrary evidence, and "give deference to the trial court's decision, even if the evidence could support a contrary conclusion." *Taylor v. Taylor*, 25 S.W.3d 634, 638 (Mo.App. W.D.2000).

■■■ The trial court's judgment awards Wife and Husband "joint custody of the minor children" and designates Wife as the "residential custodian of the children for purposes of education and mailing." The judgment also, however, awards Husband "specific visitation." There is an inherent ambiguity in a judgment that includes a "Joint Custody Order" then awards one of the parties "specific visitation." *See Loumiet v. Loumiet*, 103 S.W.3d 332, 337 (Mo.App. W.D.2003) (stating that joint physical custody gives rise to a 'joint physical custody schedule' and a 'visitation schedule' is used only in a sole custody situation). The judgment in the instant case does not clearly specify whether it awards joint legal custody, joint physical custody, or both.

Section 452.375.1(3)[3] defines "joint physical custody" as "an order awarding each of the parents significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents." Here, the trial court's order gives Husband alternating weekends, major holidays and one week in the summer.[4] This

---

3. Unless otherwise indicated, all statutory references are to RSMo 2000.

4. The judgment's incorporated joint custody order awards Husband the following parenting time:

a. Once the children are three (3) years of age, alternating weekends from 6:00 p.m. Friday to 6:00 p.m. the following Sunday;
b. With regard to the children, under the age of three (3), [Husband] shall have visitation on alternating weekends from 9:00 a.m. Saturday until 6:00 p.m. Saturday and from 9:00 a.m. Sunday until 6:00 p.m. Sunday;
c. [Husband] shall receive visitation consisting of New Year's Day, Memorial Day, Labor Day on odd numbered years and Easter Sunday and the Fourth of July on even numbered years. Further, [Wife] shall have the children with her on New Year's Day, Memorial Day and Labor Day on even numbered years and Easter Sunday and the Fourth of July on odd numbered years;
d. For the purpose of this Order, Memorial Day and Labor Day visitation shall commence at 9:00 a.m. on the holiday and shall terminate at 6:00 p.m. on the holiday. Easter holiday shall commence at 9:00 a.m. on Easter Sunday and shall terminate at 6:00 p.m. on Easter Sunday. Fourth of July holiday shall commence at 9:00 a.m. on July 4th and terminate at 10:00 p.m. on July 4th;
e. The parties shall alternate Thanksgiving holiday each year. [Husband] shall be entitled, on even numbered years, to Thanksgiving visitation from 9:00 a.m. on Thanksgiving Day until 6:00 p.m. Thanksgiving Day. Further, [Wife] shall be entitled to Thanksgiving custody, on odd numbered years, from 9:00 a.m. on Thanksgiving Day until 6:00 p.m. on Thanksgiving Day;
f. With regard to Christmas holiday each year, [Husband] shall be entitled to Christmas Eve from 9:00 a.m. until 8:00 p.m. [Wife] shall be entitled each year to Christmas custody from 8:00 p.m. on December 24th until 8:00 p.m. on December 25th;
g. [Husband] shall be entitled to Father's Day and Father's Day each year with [Wife] to have the children with her on Mother's

schedule constitutes significant parenting time. As a result, we find the judgment granted the parties joint physical custody of their children and section 452.400 (governing visitation) does not apply to Husband's claim of error.

Husband also alleges that his "visitation" award is against Missouri public policy as expressed in section 452.375.4, which states, in pertinent part:

The general assembly finds and declares that it is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child, except for cases where the court specifically finds that such contact is not in the best interest of the child, and that it is the public policy of this state to encourage parents to participate in decisions affecting the health, education and welfare of their children, and to resolve disputes involving their children amicably through alternative dispute resolution. In order to effectuate these policies, the court shall determine the custody arrangement which will best assure both parents participate in such decisions and have frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child.

Husband has failed to cite to any authority supporting his claim that the parenting time awarded him in the judgment does not constitute frequent, continuing and meaningful contact with his children or explain why no such authority is available. *See Thummel v. King*, 570 S.W.2d 679, 687 (Mo. banc 1978). "Where, as here, the appellant neither cites relevant authority nor explains why such authority is not available, the appellate court is justified in considering the point[ ] abandoned and dismiss[ing] the appeal." *In re Marriage of Spears*, 995 S.W.2d 500, 503 (Mo.App. S.D.1999) (citing *Shiyr v. Pinckney*, 896 S.W.2d 69, 71 (Mo.App. S.D. 1995)). Point IV is also denied, and the judgment is affirmed.[5]

PARRISH and RAHMEYER, JJ., Concur.

Day of each year. Said holiday shall commence at 9:00 a.m. on the holiday and shall terminate at 6:00 p.m. on the holiday;

h. [Husband] shall be entitled to one (1) week of summer visitation each summer. Said visitation shall not include overnight for the children under three (3). [Husband] shall provide [Wife] with 30–day's [sic] prior written notice of his intention to exercise summer visitation;

i. [Husband] shall be the party responsible to pick up the children at the commencement of each visitation period and return the children at the termination of each visitation period.

j. [Husband], during periods of visitation shall not take children more than one hundred (100) miles from [Wife]'s residence;

k. Holiday, Father's Day and Mother's Day custody and visitation rights shall take precedence over weekday, weekend and summer visitation and custody rights.

5. Wife's motion to dismiss is granted as to point 3 and denied as to points 1, 2, and 4.