**In re: Marriage of Mary L. SKAGGS and Jerry L. Skaggs, Mary L. Skaggs, Petitioner–Respondent,**

v.

**Jerry L. SKAGGS, Respondent–Appellant.**

**No. SD 29604.**

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 30, 2009.

W. Edward Reeves, Caruthersville, MO, for Respondent.

DON BURRELL, Judge.

Jerry L. Skaggs ("Husband") appeals from the property division contained in a judgment that dissolved his marriage to Mary L. Skaggs ("Wife"). Because Husband has failed to overcome the presumption that the property division was correct, we affirm the judgment.

### Facts

The facts, viewed in the light most favorable to the judgment, *Richmond v. Richmond,* 164 S.W.3d 176, 177 (Mo.App. E.D.2005), are as follows. Husband and Wife were married on June 11, 1999. Wife had several significant assets at the time of the marriage: 1) $21,000 in cash from a previous divorce; 2) approximately $10,000 from a 1998 personal injury settlement; and 3) ownership of a bar known as the "25 Club" that she had started with her previous husband. The 25 Club "went downhill" and ultimately lost about $15,000 after "the Skaggs" started running it, a deficit that was satisfied from a sale of the bar's equipment. Husband testified it was possible Wife also received some additional money when she sold the 25 Club.

Wife used her cash to make the following purchases: 1) $5,000 to buy a Dodge Ram truck for Husband the year before they were married; 2) $5,000 toward the purchase of a single-wide mobile home shortly after the parties were married; 3) $7,000 for a down-payment on a double-wide mobile home when they traded in their single-wide; 4) $8,000 as a down-payment on a Chevrolet Avalanche "that [Husband] wanted;" and 5) $7,000 toward the purchase of two four-wheelers, one for Husband and one for Husband's brother.[1]

H. Mark Preyer, Kennett, MO, for Appellant.

---

1. Husband said he could get a better price buying two four-wheelers instead of one, so he asked permission from Wife to also purchase one for his brother.

Husband testified that he brought two Chevrolet trucks into the marriage, a 1987 and a 1990. He later testified he also had a 1995 Chevrolet truck he traded in when the Avalanche was purchased in 2002. Husband owned no real property at the time of the marriage. Husband testified that he had "a little savings account" with "maybe a couple thousand" dollars in it when the parties married. Husband denied that Wife used any of her funds to purchase any property for him. Husband's testimony was that he had financed everything they had purchased.

About three years prior to the dissolution, Husband began working in Texas and would send money to Wife to pay their bills. Husband testified he would do this by putting money into the checking account when Wife called to say she needed money or the account was overdrawn. Husband started his own construction company in Texas in 2005, using the name "Jerry Walker" [2] instead of "Jerry Skaggs" so his brother would not get into trouble for awarding him construction contracts. Husband returned to Missouri every winter and would haul more property to Texas. After Husband did not return for an entire year, Wife called to inform him that she and a grandson living with her were out of food.

Wife had some serious health conditions, including cancer of the stomach and a previous heart attack. Wife had surgery to repair a dislocated shoulder after Husband had pulled her arm and threw her around because she had been snoring. Wife was taking chemotherapy for her recurring cancer as of the date of trial and had not worked since the year the parties were married.

Wife filed her Petition for Dissolution on September 18, 2007. That petition asked the court to dissolve the marriage, equitably divide the parties' property and, among other things, order Husband to pay her maintenance. The following February, Husband shut off Wife's electricity, closed down the checking account she had used to pay their bills, and told Wife to "go get on food stamps." Except for the "house" payment [3] and those items specifically mentioned above, all bills that were paid from 1999 to 2005 were paid by Husband. Wife testified that she made the "house" payments using the remainder of her personal funds and Social Security Disability checks she began receiving in 2005.

### The Judgment

The case was tried to the court on May 22, 2008. At the time of trial, the parties' double-wide mobile home was valued at around $50,000 and had a debt against it of $52,000. The parties owned multiple vehicles that Husband testified were worth approximately what was owed on them. According to Wife, one of those vehicles, a Harley Davidson motorcycle custom-built for Husband, was worth approximately $35,000.[4] The trial court subsequently entered a judgment that, among other things not relevant to this appeal, awarded Wife the parties' double-wide mobile home (along with the debt against it) and divided the other personal marital property without assigning a monetary value to any of it. The dissolution judgment further decreed:

---

2. Walker is the surname of Wife's previous husband.

3. We presume the parties refer here to the payments they made on the debt against the mobile homes they had purchased.

4. The motorcycle is an "Ultra Classic with a '95 Screaming Eagle motor on it." Husband disputed Wife's valuation, testifying that the value was around $12,000 or $13,000.

[T]hat, in order to effect an equitable division of the marital property and debts, and having also considered separate funds resulting from a personal injury claim and dissolution of marriage award a portion of which were brought to the marriage by [Wife], judgment is entered in favor of [Wife] and against [Husband] in the sum of $17,000.00. Said judgment shall be paid within 60 days of the date of this judgment and thereafter shall bear interest at the legal rate. (In making this award the court also has considered monthly payments made during period [sic] of separation by [Husband] upon the above described doublewide mobile home debt.)[.]

## Analysis

Husband's sole point relied on alleges the trial court abused its discretion by awarding the $17,000 monetary judgment to Wife because: 1) no evidence established that the separate funds Wife brought into the marriage still existed at the time of the dissolution trial; and 2) no evidence established that the monetary judgment was necessary to equitably balance the property distribution. Husband's point is silent as to what legal reasons support his claim of error and why those (absent) legal reasons would support his claim of error in the context of the case. *See* Rule 84.04(d).[5] As Wife's brief addresses Husband's allegation of error without complaining about the rule violation, we will do the best we can to discern Husband's legal grounds from the argument portion of his brief and not dismiss his appeal based on the rule violation. *See Moran v. Mason*, 236 S.W.3d 137, 139–40 (Mo.App. S.D.2007).

"Our review of the trial court's division of marital property is a two-step process." *Owens v. Owens*, 219 S.W.3d 867, 872 (Mo.App. S.D.2007). First, we must "determine whether the trial court's division of marital property is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law."[6] *Id.* "We then determine whether the trial court's division is an abuse of discretion." *Id.* "We do not retry the case, rather we accept as true the evidence and reasonable inferences therefrom in a light most favorable to the prevailing party and disregard contradictory evidence." *Elrod v. Elrod*, 144 S.W.3d 373, 377 (Mo.App. S.D.2004). "This is because credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of the testimony of any witness." *Colley v. Colley*, 984 S.W.2d 163, 166 (Mo.App. S.D.1998).

"A trial court must follow a two-step procedure when dividing property in a dissolution proceeding: (1) the court must set apart to each spouse their non-marital property, and (2) the court must divide the marital property and debts in such proportions as the court deems just after considering all relevant factors." *Owens*, 219 S.W.3d at 872. Husband does not challenge the trial court's award of the parties' separate property.

Factors the court must consider when dividing marital property are set forth in section 452.330.1.[7]

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the

5. Unless otherwise noted, all rule references are to Missouri Court Rules (2009).

6. Husband does not indicate which of these grounds he is relying on. As best we can

discern, it is that the property division is not supported by substantial evidence.

7. Unless otherwise noted, all statutory references are to RSMo 2000.

desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; (2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker; (3) The value of the nonmarital property set apart to each spouse; (4) The conduct of the parties during the marriage; and (5) Custodial arrangements for minor children.

■ "However, the trial court may attach the amount of weight to each of these it deems appropriate, and these factors are not exclusive." *Shepard v. Shepard*, 47 S.W.3d 412, 417 (Mo.App. S.D. 2001). The trial court is "vested with great flexibility" in dividing marital property. *Elrod*, 144 S.W.3d at 377. The division does not have to be equal, but it must be "fair and equitable under the circumstances of the case." *Id.* "The challenging party bears the burden of demonstrating error on the part of the trial court." *Shepard*, 47 S.W.3d at 417. "We presume that the trial court's division of property is correct, and the party opposing the division bears the burden of overcoming this presumption." *Nelson v. Nelson*, 25 S.W.3d 511, 517 (Mo.App. W.D.2000) (citing *Gendron v. Gendron*, 996 S.W.2d 668, 673 (Mo.App. W.D.1999)).

As best we can discern, Husband's first argument—that no evidence was presented that the separate property Wife brought into the marriage still existed at the time of the dissolution trial—reflects a misapprehension of the nature of the relief granted by the trial court. The $17,000 monetary judgment in favor of Wife did not constitute a setting-aside to her of her separate, non-marital property or represent a specific piece of marital property she was to receive. Instead, the court determined it was necessary to transfer $17,000 in cash from Husband to Wife to make its overall property division equitable. A money judgment may be used for this purpose and there is no requirement that the money come from an identifiable fund. *Scott v. Scott*, 645 S.W.2d 193, 196 (Mo.App. W.D.1982) (citing *Calia v. Calia*, 624 S.W.2d 870, 872 (Mo.App. W.D.1981)). We therefore reject Husband's first stated basis for his allegation of error.

■ We next proceed to Husband's complaint that no evidence was presented which established that the $17,000 money judgment was necessary to make the property division an equitable one. One of Husband's assertions in support of this argument, that the trial court did not properly take into consideration contributions he made during the marriage, is refuted by the judgment itself. The dissolution judgment states the $17,000 monetary judgment in favor of Wife was awarded after the court considered the funds Wife brought into the marriage and "monthly payments made during period [sic] of separation by [Husband] upon the above described doublewide mobile home debt." The judgment states the trial court also considered Husband's testimony that it was Husband's wish that Wife be awarded a "modest cash settlement" in lieu of Husband paying "any kind of maintenance."

As earlier indicated, Wife acquired $31,000 from two separate sources the year before the parties married. She testified that she subsequently expended substantial portions of those funds toward purchasing marital assets and paying marital debts. Husband denied that Wife had expended any such funds on his or their behalf during the marriage, but the trial court was not required to believe that testimony. Wife entered the marriage with $31,000 in cash, her own business, a vehicle, and other personal effects. Husband entered the marriage with "maybe a cou-

ple thousand" dollars and two older Chevrolet trucks. At the time of the divorce, Husband owned his own business, had business and personal bank accounts with unknown balances, a substantial number of tools, two newer pick-up trucks, and a custom-built Harley Davidson motorcycle.

 Though it appears on this record that Wife transmuted a substantial amount of her once separate property into marital property, the "transmutation of separate property into marital property will not preclude the trial court from considering the premarital contribution in dividing the marital property." *Groenings v. Groenings*, 277 S.W.3d 270, 276 (Mo.App. E.D. 2008) (quoting *Gremaud v. Gremaud*, 860 S.W.2d 354, 357 (Mo.App. E.D.1993)). The parties' financial situations at the time of the dissolution and the contributions each made toward the acquisition of marital property are factors the court is specifically directed to consider under section 452.330.1.

As earlier noted, the trial court's division of property is presumed correct; it is Husband's burden to overcome that presumption. *Nelson*, 25 S.W.3d at 517. Even if Husband had sufficiently demonstrated that the funds Wife brought into the marriage had been expended solely for her own benefit and not to acquire marital assets or pay marital debts, we could reverse the trial court's judgment only if that erroneous characterization materially impacted the overall distribution of marital property. Rule 84.13(b); *Judy v. Judy*, 998 S.W.2d 45, 53 (Mo.App. W.D.1999) (citing *Halupa v. Halupa*, 943 S.W.2d 272, 278 (Mo.App. E.D.1997)).

Here, Husband has failed to even allege what the difference in value is between the net marital property awarded to Husband and that awarded to Wife, let alone prove that any such difference was inequitable under the circumstances present in this case. The entirety of Husband's claim that the trial court's overall property division was inequitable is set forth in his brief as follows:

> The only evidence of value dealt primarily with the marital home and it's [sic] value was at or less than it's [sic] debt. The testimony as to the values of the remaining marital property, which consisted of motor vehicles and personal property items, came from Husband and he stated that at best he might have $10,000.00 of positive equity in his personal property.

This argument completely ignores Wife's testimony that the Harley Davidson motorcycle alone had a value of approximately $35,000 and also misstates Husband's actual testimony. Because Husband has failed to demonstrate that any difference between the net value of the marital property he received and the net value of the marital property awarded to Wife disproportionately favors Wife, he has failed to overcome the presumption that the trial court's property division was correct. As a result, we cannot say the trial court abused its discretion in awarding Wife a $17,000 money judgment as a portion of that overall property division. Husband's point is denied, and the judgment is affirmed.

BATES, P.J., and BARNEY, J., Concur.