

# Missouri Court of Appeals

## Southern District

### Division Two

KIM FLORA,                               )
                                         )
    Petitioner-Respondent,           )
                                         )
vs.                                      )    No. SD32498
                                         )
BRADLEY L. FLORA,                        )    **Filed: April 8, 2014**
                                         )
    Respondent-Appellant.            )


APPEAL FROM THE CIRCUIT COURT OF DOUGLAS COUNTY

Honorable Lynette Veenstra, Associate Circuit Judge


**AFFIRMED**

Bradley L. Flora ("Husband") appeals the division of marital property in the December 2012 judgment that dissolved his marriage to Kim Flora ("Wife"). Husband's sole point on appeal contends the trial court abused its discretion in awarding him "only 13%[1] of the net marital estate to Wife's 87%" because that award was against the weight of the evidence. Finding no merit in the claim, we affirm.

---

[1] As Husband later tacitly acknowledges by adding an "approximately" to his claimed percentage of the net marital estate, an exact percentage split cannot be calculated in this case because the trial court did not assign a monetary value to every asset.

1

## Facts and Procedural Background[2]

Husband and Wife began a relationship in California in 1991, and they started living together in 1992. While the parties were still unmarried and living in California, they had "some interest in coming to Missouri[,]" and Husband looked over a farm in Douglas County, Missouri ("the farm")[3] on one of his business trips to transport horses. In 2003, Wife purchased the farm for $140,900, using money she had received from her father's trust after he passed away in 2002. Wife purchased the farm in her sole name, there was no mortgage debt against it, and nothing was owed on the farm at the time of trial.

When the parties left California to move to Missouri and live on the farm, Wife sold her California residence, netting $195,767.19. Wife used "[v]irtually all" of the proceeds from this sale to improve the farm and purchase equipment for it.[4] A barn was constructed on the property at a cost of approximately $100,000; the farmhouse was remodeled and expanded; and equipment including a tractor, corral panels, portable stalls, and "a squeeze shoot [sic]" were purchased. The couple eventually married in 2007. The money that Wife had used for making improvements to the farm ran out in 2004, and no improvements to the farm were made while Husband and Wife were married. Wife testified that Husband did not "contribute any monies to the acquisition [of] or improvement to the [farm.]"

Wife testified that after they married, Husband "work[ed] off of the property at various sale barns" "shoeing horses[,]" and he used the farm to deal in cattle and to train

---

[2] Except where some of Defendant's testimony is included in order to fully address his arguments, we present any facts established from conflicting testimonial evidence in the light most favorable to the judgment. *See Colley v. Colley*, 984 S.W.2d 163, 166 (Mo. App. S.D.1998) ("credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of the testimony of any witness").

[3] The farm is described in the judgment as: "**The N ½ SW ¼ of Section 1, Township 25, Range 15, Douglas County Missouri.**" The farm was also referenced during testimony as consisting of an 80-acre tract of land.

[4] Wife also testified that a portion of these proceeds was used to help Husband's mother purchase a mobile home that was placed on the farm. Since that time, the mobile home was paid off and Wife provided Husband with the "title to give to his mother[.]"

horses for other people. Wife never received any money from these endeavors. Husband's interrogatory responses, dated March 5, 2012, were admitted as Wife's Exhibit 28, and Husband's answer to interrogatory no. 3 stated that he had three employers during the previous three years: the stockyard, at $240 per week; "DRS[,]" as a welder at $430 per week; and self-employment, "[r]aising/[t]raining [h]orses" at "$0-$20,000 yearly[.]" Husband testified that "[d]uring the time of the marriage . . . from 2007" until trial, his "business there on the farm was 100-percent cash." He testified that some months he would make $500 and other months he would make $5,000. Husband also testified that since the end of March 2012, he had been working for "WCI Construction, Whitehead Construction, Incorporated."

Wife began working for Walmart in 2004. In 2007 she was promoted to the position of "asset protection coordinator" for one of Walmart's stores. Wife earned $36,899 in 2010 and $35,419 in 2011. Wife testified that she had a 401(k) retirement plan at Walmart that had an $8,438 balance at the time of trial. Wife testified that in January 2009, Husband was "hounding" her, telling her that he felt "like a hired hand[,]" that he had "no pride in ownership, and that there was nothing going to be done unless his name was put on the deed" to the farm. On January 15th or 16th, 2009, Wife executed a general warranty deed that added Husband as an owner of the farm. Three months later, Husband informed Wife "that he didn't love [her] anymore[,]" and Wife asked him to move out.

The following month, Wife added Husband's name to one of her bank accounts, and sometime in 2010, Husband moved back in with Wife. Wife eventually filed her dissolution petition in January 2011.

3

Wife testified that Husband did not pay any expenses associated with the farm, and he did not pay any household expenses during their marriage, except that he did pay Wife "$90 a month toward [Husband's] vehicle insurance[,]" and Husband sometimes paid for some of his own groceries.

Wife testified that Husband did not work to maintain the farm, except that on the "very rare occasion" he would "brush hog" the property "for an hour or so[,]" he would sometimes fix broken barbed wire, and on one occasion in 2009, he helped sand the dining room floor "for about 10 or 15 minutes" while Wife made him breakfast. Wife recalled on one occasion that Husband stood and visited with the neighbors while the neighbors were helping her rebuild a fence.

A neighbor, Alyson Burton, testified that over the last couple of years, she was usually at the farm "three to four times a week[.]" She had helped Wife build fences between their property and around Wife's house. Ms. Burton stated, "[I]f we were both off work, we were out there doing what we could." Ms. Burton saw Husband help roll up some old fence on one occasion when others were "working on building the fence[,]" but other than that, she had not seen Husband working on the farm.

Husband did not dispute that Wife had invested "over $300,000" in the farm. At trial, Husband was asked, "What is the monetary value that you would assign to what you are contending is your contribution [to the purchase of the farm]?" His reply was, "I'd have no idea right now." Husband also acknowledged that he did not have any documentation for "any contribution of finances that [he] made to the acquisition, improvement, or maintenance of [the farm.]" When asked, "If you had to put a dollar amount on how much

4

labor you've put in the farm, would you even be able to venture a guess?[,]" Husband replied, "No."

John Sutton, a realtor and auctioneer, testified that he prepared a "market value analysis" of the farm. That analysis suggested that the value of the farm at the time of trial was between $230,000 and 235,000. Wife put "a rough estimate" on "the value of the farm at $200,000[.]"

Wife's Interrogatory No. 11 in Exhibit 28 sought information on any transfers of property that Husband might have engaged in during the previous three years. It stated:

> If you have transferred any real or personal property within the past three years, please state:
>
> a. The property transferred, and if real estate, provide the legal description of the property;
>
> b. The date you transferred the property;
>
> c. The name and addresses of the person to whom you transferred the property;
>
> d. The amount you sold the property for and whether you have been paid all or part of the sales price. If only part, state the amount you have been paid and when the balance is due.

The following was the entirety of Husband's answer to that interrogatory:

**ANSWER: Property 80 acres on CR 321; 2009; [Husband]; marriage transfer**

At trial, Husband testified that he: sold a horse for $1,750 in cash; traded a horse for two saddles that he in turn sold for a total of $800; traded a truck for $7,800 toward a different truck; and traded a horse trailer worth $7,200 or $7,400 "[t]rade-in value" for another horse trailer and as a down-payment on a four-wheeler. Husband then sold the four-wheeler for $1,500. Husband also said that he could not "say for sure, but" he probably sold

5

around $5,000 to $6,000 worth of horses "[s]ince 2009[.]"  The following exchange occurred

regarding cattle sales by Husband:

> Q. And with regard to the cattle that you sold, you sold several thousand dollars in cattle since 2011?
>
> A. Several thousand?
>
> Q. Yeah.
>
> A. Several thousand, huh?

The following exchange occurred during Wife's cross-examination of Husband about

his interrogatory answer concerning whether he had transferred any real or personal property

in the last three years:

> Q. Okay.  And did you answer that question to include all of these items that you have now told us you've sold and traded and received monies for?  Does that include --
>
> A. No, it doesn't.
>
> Q. -- does your answer there somewhere include that?
>
> A. No, it doesn't.
>
> Q. And have you ever supplemented with anything?  I think these were answered in -- let's see -- March 5, 2012.  You would have just received these recently.
>
> A. They were answered prior to that.  And, yes, everything that I have gotten and sold has been done after this has been filled out.
>
> Q. Well, you signed it verifying these answers, did you not, sir, on March 5, 2012?
>
> A. I think it says 1/11/21.
>
> Q. No.  That's my commission expires on January 11, 2021.  That's the notary.  This says that subscribed and sworn to me on the 5th day of March, 2012.  Is that your signature above it?
>
> A. Yeah.

Q.      So, did you verify that the answers were correct?

A.      Uh-huh.

Q.      Is that yes?

A.      Uh-huh.

Q.      Yes?

A.      Yes.

Q.      And, in fact, they're not correct, are they?  You sold a whole lot of things and received a whole lot of monies that are not listed here, correct?

A.      Correct.

Q.      And you don't know how much you've sold?

A.      No.

Q.      You have no idea how much money you have received?

A.      No, ma'am.

*The Judgment*

The trial court entered its dissolution judgment in November 2012.  It awarded certain items of non-marital property to Wife, collectively valued at $51,359, plus three items listed without specific dollar values: a "Craftsman garden tractor," "[g]randmother's silver[,]" and "[t]ools[.]"[5]  The judgment awarded Husband certain items as non-marital property, collectively valued at $23,700, plus two items without stated dollar values: a "Ford tractor[,]" and a "100 year old hope chest[.]"

The trial court found that Wife was "the source of all funds for the acquisition of the [farm]" and that she "contributed significant sums of money to the improvement of the

---

[5] The total figure for the non-marital property awarded to Wife included a "2011 Ford F-150 Truck" that the trial court valued at $40,115.00.  Wife testified that the money "utilized for the purchase of" the truck was "a gift from [her] mother and stepfather[.]"

7

[farm], including the construction of a horse barn and show arena and remodeling the home located on the [farm]." Wife was found to have "executed a warrant[y] deed adding [Husband's] name as an owner of the real estate." The trial court rejected Wife's argument that "the real estate remained her non-marital property[,]" and it found that the farm "is properly classified as marital property of the parties and the relevant facts are considered as a part of this Court's analysis under section 452.330[6] as set forth below in arriving at the division of marital property."

Specifically, the trial court found

that [Husband] disposed of an undetermined amount of marital property after the parties' separation, dealt in cash in his business with no records for many transactions, and contributed very little to the parties' household expenses. The purchase of the [farm], and the improvements that were subsequently made to the [farm] were funded by [Wife's] contributions from non-marital sources with little or no contribution from [Husband]. The Court finds that [Husband] made minimal financial contribution to the maintenance of the [farm] and living expenses of the parties during the time of the marriage and whatever income he did generate he used for his personal expenses and endeavors, not toward the marital venture.

The trial court valued the farm at $235,000 and awarded it to Wife.

Wife was also awarded other specific marital property having a total value of $1,400, plus an account representing a "Wal-Mart 401[(k)] Plan" which did not have a stated value. Husband was awarded marital property having a total value of $45,346, plus "[a]ll other property [Husband] sold and kept proceeds from--undetermined value." Husband's award of marital property included a "Long tractor[,]" "Squeeze Chute[,]" and "32 Cattle panels[.]"

Wife was allocated marital debts totaling $14,100, plus "[a]ny other debts in her sole name." Husband was ordered to pay marital debts totaling $10,800, plus "[a]ny other debts in his sole name." Neither party was awarded maintenance.

---

[6] All statutory references are to RSMo 2000. All rule references are to Missouri Court Rules (2013).

Husband timely filed a motion for new trial on December 7, 2012. The motion asserted, *inter alia*, "[t]hat the judgment . . . divided the marital property in a disproportionate manner and awarded [Wife] approximately 87% of the marital assets and [Husband] approximately 13% of the marital assets." Before Husband's motion for new trial was denied on January 3, 2013, Husband filed his notice of appeal. As a result, we treat Husband's notice of appeal as having been "filed immediately after the time the judgment bec[ame] final for the purpose of appeal." Rule 81.05(b).

**Applicable Principles of Review and Governing Law**

> "Our review of the trial court's division of marital property is a two-step process." *Owens v. Owens*, 219 S.W.3d 867, 872 (Mo. App. S.D. 2007). First, we must "determine whether the trial court's division of marital property is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." *Id.* "We then determine whether the trial court's division is an abuse of discretion." *Id.* "We do not retry the case, rather we accept as true the evidence and reasonable inferences therefrom in a light most favorable to the prevailing party and disregard contradictory evidence." *Elrod v. Elrod*, 144 S.W.3d 373, 377 (Mo.App. S.D.2004). "This is because credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of the testimony of any witness." *Colley v. Colley*, 984 S.W.2d 163, 166 (Mo.App. S.D.1998).

*Skaggs v. Skaggs*, 301 S.W.3d 72, 75 (Mo. App. S.D. 2009) (footnote omitted).

The discretion afforded the trial court in dividing marital property is broad. *Travis v. Travis*, 163 S.W.3d 43, 46 (Mo. App. W.D. 2005). This discretion is abused only "when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to indicate indifference and a lack of careful judicial consideration." *Cohen*, 73 S.W.3d at 53. "If reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the trial court abused its discretion." *Nelson v. Nelson*, 25 S.W.3d 511, 516 (Mo. App. W.D. 2000).

9

"A trial court's award of a higher percentage of marital assets to one party does not *per se* constitute an abuse of the court's discretion." **Cohen**, 73 S.W.3d at 53. "In fact, this court routinely affirms highly disproportionate divisions of marital property." **Nelson**, 25 S.W.3d at 517.[7] Thus, a "[d]ivision of marital property need not be equal, but it must be fair and equitable considering the circumstances of the case." **Travis**, 163 S.W.3d at 46. "We presume that the trial court's division of property is correct, and the party opposing the division bears the burden of overcoming this presumption." **Nelson**, 25 S.W.3d at 517.

### Analysis

Husband's point contends error in the division of marital property on two grounds -- that it "was against the weight of the evidence and [it] constituted an abuse of the trial court's discretion[.]" Husband's argument supporting the point then maintains that the judgment "was so against the weight of the evidence that it constituted an abuse of the trial court's discretion[.]"[8]

Specifically, Husband asserts that "the main asset of the parties was [the farm,] which the trial court valued at $235,000.00[.]" Husband contends the property division was erroneous because he contributed to the maintenance of the farm, "Wife possessed substantially more non-marital property and was in substantially better financial condition than Husband[,]" and "Husband did not sell an 'indeterminate amount of marital property[.]'"

---

[7] The **Nelson** case upheld an award of 70% of the marital property to a spouse based upon multiple factors and the opinion cites decisions in other cases where the difference in the division was significant including one where the property division involved an 86% award of marital property to a spouse. **Id.** (citing **Jennings v. Jennings**, 910 S.W.2d 760, 765-67 (Mo. App. S.D. 1995) (property division upheld based upon multiple factors)).

[8] A similar blending of the two concepts seems to have been recently countenanced, at least as applicable to an award of maintenance, by the western district of our court in **Potts v. Potts**, 303 S.W.3d 177, 192 (Mo. App. W.D. 2010) ("[w]e will reverse an award of maintenance only if the trial court abuses its discretion 'by acting against the weight of the evidence or by erroneously declaring the law'") (quoting **McMullin v. McMullin**, 926 S.W.2d 108, 112 (Mo. App. E.D. 1996)).

10

*The Weight of the Evidence*

> [A] claim challenging a judgment as against the weight of the evidence "presupposes the threshold issue of the existence of substantial evidence supporting a proposition necessary to sustain a judgment, but, nevertheless, challenges the probative value of that evidence to induce belief in that proposition when viewed in the context of the entirety of the evidence before the trier of fact."

*In re Marriage of Oakley*, 340 S.W.3d 628, 637 (Mo. App. S.D. 2011) (quoting *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo. App. S.D. 2010)). "[W]here the resolution of conflicting testimony is required to determine the merits of an against-the-weight-of-the-evidence argument, we defer to the trial court's credibility determinations in the same manner as in the resolution of a not-supported-by-substantial-evidence argument." *Houston*, 317 S.W.3d at 186.

> [A]n against-the-weight-of-the-evidence challenge requires completion of four sequential steps:
>
> (1)   identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2)   identify all of the favorable evidence in the record supporting the existence of that proposition;
>
> (3)   identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
>
> (4)   demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Id*. at 187.

Husband's challenge is not organized in such a manner. First, he has not clearly identified the factual proposition he is challenging. As a result, he fails to demonstrate why

11

the evidence supporting any particular factual proposition "is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition." *Id.* Instead, Husband simply directs us to evidence that he believes would have supported the trial court giving him a larger percentage of the marital property without explaining why Wife's contrary testimony was lacking in probative value. The trial court was entitled to believe Wife's testimony on these matters and reject Husband's. *See Skaggs*, 301 S.W.3d at 75 (the trial court may believe some, none, or all of the testimony of a witness). As a result, Husband's against-the-weight-of-the-evidence challenge fails.

*Trial Court's Discretion in Dividing Marital Property*

Husband acknowledges that "a division of marital property does not have to be equal, [but] it does have to be fair and equitable in light of the circumstances attending each individual case when the relevant factors under [section 452.330.1] are considered." *See Travis*, 163 S.W.3d at 46 (the division need not be equal, but it must be fair and equitable under the circumstances); *Nelson*, 195 S.W.3d at 507 (under section 452.330.1, "the trial court is required to consider all relevant factors, including" those listed in the statute).

Husband agrees that there was evidence that the funds used to purchase the farm "came from the sale of Wife's pre-marital home and an inheritance from her father[,]" but he asserts that he was the one "who found the [farm] and negotiated its purchase." He also asserts that he was involved in the improvement of the farm. These arguments simply overlook the requirement that we view the evidence in the light most favorable to the judgment and defer to the trial court's determination of the credibility of witnesses and the proper weight to accord their testimony. *See Skaggs*, 301 S.W.3d at 75.

12

Here, as noted by Husband, the farm was the parties' largest marital asset, and the trial court was required to consider the statutory factor of "the contribution of each spouse to the acquisition of the marital property." *Robertson v. Robertson*, 3 S.W.3d 383, 385 (Mo. App. S.D. 1999). *See* also section 452.330.1.[9] In other words, the "[t]ransmutation of separate property into marital property will not preclude the trial court from considering the premarital contribution in dividing the marital property." *Gremaud v. Gremaud*, 860 S.W.2d 354, 357 (Mo. App. E. D. 1993).

Husband contends that "[t]he trial court's focus on only the contribution of each party toward the acquisition of the property to the exclusion of all other factors was error in light of all the evidence in this case." Husband argues that his situation is similar to the one addressed in *Goller v. Goller*, 758 S.W.2d 505, 508 (Mo. App. W.D. 1988), where the Western District found that the trial court "placed undue emphasis on the relative financial contributions of the parties." In that case, the trial court had stated that the factors "other than contribution[,]" were "not really of any persuasive weight[.]" *Id.* The trial court's

---

[9] Section 452.330.1 provides:

> In a proceeding for dissolution of the marriage . . . the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors including:
>
> (1)    The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;
>
> (2)    The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
>
> (3)    The value of the nonmarital property set apart to each spouse;
>
> (4)    The conduct of the parties during the marriage; and
>
> (5)    Custodial arrangements for minor children.

division of property -- awarding 36% to the wife -- was reversed and the case was remanded, among other things, "for reconsideration of the division [of marital property] based upon all of the factors contained in [section] 452.330." *Id.* at 508, 509. The marital property in *Goller* was valued in excess of $2.2 million, and the trial court had reasoned that the smaller the marital estate, "the closer [the trial court] would tend to be to 50-50" in dividing it. *Id.* at 507, 509. The Western District found that "the fairness of the division certainly does not depend on the value of the marital property involved" and that "[t]he statute [section 452.330] makes no distinction between large and small marital estates." *Id.* at 509.

*Goller* is inapposite. First, Husband's premise is faulty -- he points to nothing in the judgment in the instant case that indicates the trial court found that factors "other than contribution" were "not really of any persuasive weight[.]" *Id.* at 508. To the contrary, the judgment explicitly states that the trial court had "considered the evidence adduced at trial and the statutory factors set forth in [s]ection 452.330[.]" Second, Husband does not claim that the trial court skewed its division of property based on the legally irrelevant factor of the size of the marital estate involved. *Id.* at 509.

Husband specifically contends that the trial court failed to properly consider three other factors listed under section 452.330.1, but he makes no reference to any portion of the judgment that might support two of those claims. Those three contentions are: 1) the factor of the economic circumstances of each spouse, *see* section 452.330.1(1), "certainly does not support an 87%/13% division of marital property in favor of Wife"; 2) the factor of the value of the non-marital property awarded to each spouse, *see* section 452.330.1(3), "certainly does not support" the division of marital property in the judgment; and 3) "[t]he trial court may have included [section 452.330.1(4) concerning the conduct of the parties during the

14

marriage] in its analysis" in referring to Husband's disposal of an indeterminate amount of property, dealings in cash without records in his business, and contribution of little to household expenses, but "[t]he evidentiary support for this finding is lacking[.]"

The trial court had specific evidence of Wife's income to consider, but it had only incomplete evidence of Husband's income as Husband's interrogatory answer listed his self-employment income as varying by the wide range of "$0-$20,000 yearly" and he testified at trial that his "business there on the farm was 100-percent cash" with monthly incomes ranging from $500 to $5,000. And Husband was unable to place a value on the labor he said he expended on the farm. Concerning the division of property, "[t]he *parties* are responsible for presenting evidence upon which the court may make its ruling. ***Lance v. Lance***, 979 S.W.2d 245, 252 (Mo. App. W.D. 1998) (emphasis added) (trial court did not abuse its discretion in its equal split of the marital business "[i]n the absence of credible or decipherable information from" the spouse challenging the division).

Although "[t]he parties bear an equal burden to present evidence as to the value of marital property[,]" ***Sullivan v. Sullivan***, 159 S.W.3d 529, 535 (Mo. App. W.D. 2005), Husband admitted that his answer to interrogatory no.11, made within three months of trial, was incomplete, and he agreed that he "sold a whole lot of things and received a whole lot of monies that [we]re not listed" in the interrogatory answer. And although Husband testified specifically about a few transactions, he could not state how much property he had sold or "how much money [he had] received[.]" Husband also did not testify as to what amount of those proceeds, if any, was used to meet necessary living expenses.

Under these circumstances, the trial court had no specific evidence for a different division of the marital property based on the difference in the economic circumstances of the

15

parties because the value of property Husband had sold and the actual amount of his income were either undisclosed or uncertain. The trial court's findings that Husband "disposed of an undetermined amount of marital property[,]" that he "dealt in cash . . . with no records for many transactions," and that he contributed little to household expenses while using his income "for his personal expenses and endeavors" are supported by the record, and the trial court was not obligated to find that the value of the property Husband disposed of was "a grand total of $4,050.00"[10] as Husband insists in his brief.

As to the factor of the value of the non-marital property set aside to each party, the entirety of Husband's argument consists of the following two sentences:

> Wife was awarded $51,559.00 of non-marital property . . . while Husband was awarded only $23,700.0 of non-marital property. . . . This factor certainly does not support an 87%/13% division of the marital estate in favor of Wife.

Such a bare assertion, without any argument from the record and the law to support it, is insufficient to convince us that the trial court failed to appropriately consider this statutory factor in making its property division.

Regarding the conduct of the parties during the marriage, the trial court did not expressly find that Husband had dissipated or squandered assets, and it did not specifically reduce Husband's share of marital property based upon a particular amount representing such assets, it simply awarded those items, whatever they might be, to Husband.[11] Husband points us to no authority that a different award of marital property was warranted based on an unknown value of assets disposed of by Husband. The trial court faced the difficult task of making a fair and equitable division of the parties' marital property without complete

---

[10] In reaching this figure, Husband did not include the amounts for trade-in values of the property which was used to obtain property subsequently awarded to him in the judgment.

[11] Where assets have been found to be dissipated, "the court may reduce the offending spouse's share of the division or order reimbursement." *Valentine v. Valentine*, 400 S.W.3d 14, 27 (Mo. App. E.D. 2013).

16

information about the identity and value of that property. Husband will not be heard to complain that he should have been awarded additional property based on a lack of evidence that he could have supplied from his own first-hand knowledge. *Cf. Smith v. Smith*, 682 S.W.2d 834, 836 (Mo. App. E.D. 1984) ("[a] complainant should not be rewarded for presenting insufficient evidence of property values").

The trial court could reasonably find that a property division heavily weighted in favor of Wife was equitable due to Wife's sole contribution toward the acquisition and improvement of the farm, the largest marital asset. Husband has failed to convince us that the trial court's division was so clearly against the logic of the circumstances then before it and so arbitrary and unreasonable as to indicate an indifference and lack of careful judicial consideration. *Cohen*, 73 S.W.3d at 53. Husband's point is denied, and the judgment of the trial court is affirmed.

DON E. BURRELL, J. - OPINION AUTHOR

JEFFREY W. BATES, P.J. - CONCURS

GARY W. LYNCH, J. - CONCURS